**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **WSOU INVESTMENTS, LLC D/B/A** | § | **CIVIL ACTION 6:20-cv-1163-ADA** |
| **BRAZOS LICENSING AND** | § | **CIVIL ACTION 6:20-cv-1164-ADA** |
| **DEVELOPMENT,** | § | **CIVIL ACTION 6:20-cv-1165-ADA** |
| *Plaintiff,* | § | **CIVIL ACTION 6:20-cv-1166-ADA** |
| | § | **CIVIL ACTION 6:20-cv-1167-ADA** |
| **v.** | § | **CIVIL ACTION 6:20-cv-1168-ADA** |
| | § | **CIVIL ACTION 6:20-cv-1169-ADA** |
| **SALESFORCE.COM, INC.,** | § | **CIVIL ACTION 6:20-cv-1170-ADA** |
| *Defendant.* | § | **CIVIL ACTION 6:20-cv-1171-ADA** |
| | § | **CIVIL ACTION 6:20-cv-1172-ADA** |

**PLAINTIFF'S SUR-REPLY CLAIM CONSTRUCTION BRIEF**

**Table of Contents**

I.   **U.S. Patent No. 7,551,731 (Case No. 6:20-cv-1163-ADA)** ........................................... **1**

     1.   "calling terminal" (claims 1, 2, 7-11, 16-17) ...................................................1

     2.   "looking up, based on at least one of a hour, minute, second and day" (claims 1, 10) ...............................................................................................................2

     3.   "changeable by at least one of the calling terminal and a network"  (claims 1, 10, 16). ..........................................................................................................2

     4.   "called terminal" (claims 10, 11) ....................................................................3

II.  **U.S. Patent No. 8,209,411 (Case No. 6:20-cv-1164-ADA)** ........................................... **3**

     1.   "messaging gateway" (claims 1, 10, 18) .........................................................3

III. **U.S. Patent No. 8,280,928 (Case No. 6:20-cv-1165-ADA)** ........................................... **5**

     1.   "directory" (claims 1, 13) .................................................................................5

     2.   "identifying a single initial descriptor that links a plurality of descriptors and two or more predecessor descriptors linking another single descriptor" (claims 1, 13) .............................................................................................................7

IV.  **U.S. Patent No. 8,335,819 (Case No. 6:20-cv-1166-ADA)** ........................................... **8**

     1.   "scripting file" (claims 1–2, 5, 7–9, 12, 14, 16–17) .........................................8

     2.   "first-time request" (claims 1, 8, 16) ...............................................................9

V.   **U.S. Patent No. 8,369,827 (Case No. 6:20-cv-1167-ADA)** ......................................... **10**

     1.   "Subscriber Profile Repository (SPR)" (claims 1, 14) ....................................10

VI.  **U.S. Patent No. 8,391,892 (Case No. 6:20-cv-1168-ADA)** ......................................... **11**

     1.   Single dispute: whether claim 1 recites a specific order of steps ....................11

VII. **U.S. Patent No. 8,923,899 (Case No. 6:20-cv-1169-ADA)** ......................................... **12**

     1.   "RESTful" (claims 1, 3, 6-8, 10, 13-16) ........................................................12

     2.   "Session Initiation Protocol (SIP) request" / "SIP request" (claims 1-2, 6-9, 13-16) ...............................................................................................................13

VIII.   **U.S. Patent No. 9,088,493 (Case No. 6:20-cv-1170-ADA)** ........................................ **14**

    1.   "login of the user with one of the one or more online services" (claims 1,5) .................14

    2.   "[determining / determine] … a pattern of consistent usage from the timing information" (claims 1,5) .........................................................................................16

    3.   "a consistency of the determined pattern of consistent usage" (claims 1,5) .................16

IX.   **U.S. Patent No. 9,277,060 (Case No. 6:20-cv-1171-ADA)** ...................................... **17**

    1.   "event" (claims 1, 5, 8, 9, 11, 17, 18, 21) ..................................................................17

    2.   "log(s)" (claims 1, 2, 3, 11, 17, 21) ...........................................................................19

X.   **U.S. Patent No. 9,336,320 (Case No. 6:20-cv-1172-ADA)** ..................................... **20**

    1.   "the menu items are associated with the two or more different services" (claims 1,10) ...........................................................................................................................20

    2.   "presented in a manner indicating that the at least one menu item is unavailable" (claims 1, 10) .......................................................................................21

**Exhibits**

| Exhibit | Description |
|---|---|
| A | U.S. Pat. No. 6,343,120 ("Rhodes") |
| B | Alastair Campbell, The Digital Designer's Jargon Buster (2004) (excerpts) |
| C | Office Action, U.S. Appl. No. 13/160,658 |

**Abbreviations**

| Exhibit | Description |
|---|---|
| Br. | Salesforce's Opening Claim Construction Brief (filed Nov. 1, 2021) |
| Reply | Salesforce's Reply Claim Construction Brief (filed Nov. 3, 2021) |
| Resp. | Plaintiff's Responsive Claim Construction Brief (filed Nov. 18, 2021) |

I.      **U.S. Patent No. 7,551,731 (Case No. 6:20-cv-1163-ADA)**

      1.   **"calling terminal"**

*First*, Salesforce misstates WSOU's position as "maintain[ing] that [the terms 'calling terminal' and 'called terminal'] are not different." Reply 1 (citing Resp. 2–3). WSOU does not maintain that the terms are the same but merely that a POSITA would be able to discern and apply a plain-and-ordinary meaning for both terms. *See* Resp. 2–3. Accordingly, the issue is not—as Salesforce contends—whether "differentiated usage of the terms supports that their meanings are different" (Reply 1)—but rather why the Court should deviate from plain and ordinary meaning when Salesforce has not invoked either of the two *Thorner* exceptions. *See* Resp. 2–3 (noting lack of *Thorner* exceptions); Br. 31 (failing to cite a *Thorner* exception); Reply  at 1; *see Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).[1]

*Second*, Salesforce wrongly concludes that WSOU "fails to rebut that other [district] courts have treated 'calling terminal' distinctly from 'called terminal.'" Reply 1 (citing Resp. 3). Contrary to Salesforce's claim, there is nothing for WSOU to "rebut." Namely, Salesforce has not identified a single court (and certainly not "courts," plural) that has construed "calling ***terminal***." *See* Br. 31 n.8. Rather, Salesforce has only identified the *Intellectual Ventures* case, but that case dealt with a different claim term ("routing a call between a calling ***party*** and a called ***party*** of a telephone network") in an unrelated patent filed in 1988. *Id.* Salesforce fails to explain how the *Intellectual Ventures* construction of a different claim term in an unrelated patent that issued from an application filed more than 16 years before the filing date of the application that led to the issuance of the '731 patent would have any bearing to the constructing of "calling terminal" here. Even if the terms were the same, they "need not have the same meaning when used in an entirely separate patent, particularly one involving different technology." *Medrad, Inc. v. MRI Devices Corp.*, 401

---

[1] Salesforce fails to address WSOU's First Argument ("Salesforce errs in attempting to rewrite 'terminal' as 'a device' in this context…."), Second Argument (arguing that Salesforce's construction is unnecessary in view of the surrounding language), and arguments that the Eon case relied on by Salesforce is inapposite. *Compare* Reply 1 *with* Resp. 1-2 (First Argument), 2 (Second Argument), and 3 n.4 (*Eon* discussion).

F.3d 1313, 1318 (Fed. Cir. 2005)); *see also* Resp. 38 n.12 (citing additional case law).  Rather, it is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*).[2]

### 2.  "looking up, based on at least one of a hour, minute, second and day"

*First*, Salesforce incorrectly asserts that the parties "agree that this limitation is not met by the subjective specification of an appropriate time—instead a specific, objective time is required." *See* Reply 2.  As WSOU noted, "Salesforce is wrong to draw a distinction between 'particular point in time' and 'appropriate time.'  A particular point in time may in fact be appropriate or inappropriate."  Resp. 6.  Put another way, the whole concept of appropriate (or inappropriate) time should have no bearing on the meaning of this claim term.

*Second*, while Salesforce attempts to dismiss it as a "strawman argument," Salesforce fails to address WSOU's argument that the Applicants did not disavow "appropriate times," but merely noted how the disclosure in Rhodes was lacking.  *See St. Clair Intellectual Prop. Consultants, Inc. v. Canon, Inc.*, CIV.A.03-241 JJF, 2004 WL 1941340, at *17 (D. Del. Aug. 31, 2004) (finding no disavowal of "all memory cards" despite applicants distinguishing prior art); *DataTreasury Corp. v. Ingenico S.A.*, 5:02CV124, 2006 WL 6222493, at *3 (E.D. Tex. Apr. 14, 2006) (no disavowal of ordinary meaning of "remote" despite distinguishing prior art), report and recommendation adopted, 5:02CV124, 2006 WL 6112211 (E.D. Tex. Oct. 6, 2006).

### 3.  "changeable by at least one of the calling terminal and a network"

*First*, Salesforce errs by confusing the concepts of claim *scope* with a specification's disclosure.  Salesforce's confusion is evident from the wording of its arguments.  Notably, Salesforce alleges that its construction "reflects the correct reading of *this term*: as *disclosing* only caller-side substitution of alternative Caller ID values."  Reply 2.  For over three decades, the Federal Circuit has made clear that "Specifications teach.  Claims claim."  *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 n. 14 (Fed.Cir.1985) (*en banc*).  Salesforce's reference

---

[2] To the extent the Court is inclined to consider district court constructions for informative guidance, it should—at a minimum—at least consider the *Mobile Telecommunications* and *Verizon* cases that let the plain and ordinary meaning of "calling terminal" stand. *See* Resp. 3.

to a claim term "disclosing" violates this basic tenet of patent law and reveals the fundamental flaw of its approach. Moreover, even if the specification only disclosed "caller-side substitution of alternative Caller ID values" as Salesforce claims, the claims would not be so limited. *Phillips*, 415 F.3d at 1323 ("expressly reject[ing] the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment").

**Second**, WSOU had noted that Salesforce failed to provide ***any*** explanation (principled or otherwise) why it (i) interjects the phrase "supporting that device" into its construction and (ii) removes the phrase "at least one of" from the claim language. Resp. 6–7 (citing Br. 33–33; *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee."). In its Reply, Salesforce claims that its proposed construction does not deviate from the claim language and is merely added as a "necessary clarification … which would not be apparent to a lay jury." Reply 2. But Salesforce fails to provide any explanation why the claim language is unclear that it would require its purported "necessary clarification" for a lay jury. *See id.*

### 4. "called terminal"

As WSOU explained, the term "called terminal" requires no construction. Resp. 7–8. Because Salesforce combines "called terminal" with "calling terminal" in its Reply, WSOU incorporates by reference its arguments for "calling terminal" above in Section I.1, *supra*.

## II. U.S. Patent No. 8,209,411 (Case No. 6:20-cv-1164-ADA)

### 1. "messaging gateway"

***First***, WSOU had noted that Salesforce improperly relied on a non-technical Jargon Buster dictionary definition authored by an individual lacking a technical background. Resp. 9 (citing Ex. B at Introduction; Back Cover; About the Author). In its Reply, Salesforce does not dispute the non-technical nature. *See* Resp. 3–4. But Salesforce misstates WSOU's position as "adopt[ing]" the Microsoft Computer Dictionary definition. Reply 4. As made clear in its Response, WSOU never "adopt[ed]" the Microsoft Computer Dictionary definition but merely noted Salesforce's reliance on the non-technical Jargon Buster definition over the Microsoft Computer Dictionary

Definition. Resp. 9. WSOU was merely pointing out the logical frailty of Salesforce's selective (and arbitrary) reliance on one of its cited dictionaries over the other. Indeed, as evidence from WSOU's plain-and-ordinary meaning position, the Court should not rely on *any* dictionary definitions. *See* Resp. 8–10. To the extent the Court considers dictionaries for guidance, Salesforce is also wrong to claim that the Microsoft Computer Dictionary definition is "***consistent with***" the non-technical Jargon Buster definition. Reply 4. The Microsoft Computer Dictionary definition merely describes "connect[ing] networks," not the "disparate" concept that the non-technical Jargon Buster definition provides.

**Second**, Salesforce misstates WSOU's position as "argu[ing] that the claimed 'first network environment' and the "second network environment' can be the same network environment." Reply 3. Tellingly, Salesforce fails to provide any citation to WSOU's briefing for that characterization. *See id.* After noting Salesforce's improper reliance on the Jargon Buster definition and the circular reasoning, WSOU merely noted that "Salesforce fails to cite to any intrinsic evidence that indicates that the networks are 'necessarily … separate.'" Namely, Salesforce fails to cite any intrinsic evidence that refers to "necessarily" and "separate" and the phrase "necessarily separate." *See* Reply 9–11.

**Third**, Salesforce argues that its construction is required to not "render superfluous the claim terms 'interfacing, via a messaging gateway' and 'receive, from the first network environment, content and addressing information.'" Reply 3. Namely, Salesforce wrongly argues that the "two network environments would not need to interface with each other via a messaging gateway." *See id.* Salesforce provides no evidentiary support for this assertion. Even if it did rely on actual evidence, the Court should defer to the actual claim language rather than allow Salesforce to rewrite the claims. *K-2*, 191 F.3d at 1364 ("Courts do not rewrite claims…").

**Fourth**, Salesforce attempts to brush aside that the portions of the specification that Salesforce cites merely relate to "embodiments." Reply 4. Salesforce claims that "each instance" in the specification supports its construction. Even if that were true, the Federal Circuit (*en banc*) "expressly rejected the contention that if a patent describes only a single embodiment, the claims

4

of the patent must be construed as being limited to that embodiment." *Phillips*, 415 F.3d at 1323.

**Fifth**, Salesforce is wrong to assert that the "clear and unequivocal" standard for disavowal is "an incorrect statement of law." Reply 4. The "clear and unequivocal" standard is governing precedent. *Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1136 (Fed. Cir. 2016) ("disavowal must be clear and unequivocal"). Indeed, the *Columbia* case that Salesforce relies endorsed *Thorner* for the proposition that "[i]t is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments, *the patentee must clearly express an intent to redefine the term*." *Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016) (quoting *Thorner*, 669 F.3d at 1365)).[3] Yet this approach—rejected by both *Thorner* and *Columbia*—is exactly what Salesforce argues. Br. 24–25 (quoting but not citing a portion of the specification (1:55–2:4)).

## III.    U.S. Patent No. 8,280,928 (Case No. 6:20-cv-1165-ADA)

### 1.    "directory"

Salesforce fails to rebut the presumption that the preambles of claims 1 and 13 do not require an entire "directory" itself as an affirmative limitation.  Resp. 11–13.  The preamble word "directory" appears in a compound list of *adjectives* simply to provide nonlimiting *context*.  *Id*.

Contrary to what Salesforce mispresents to the Court, WSOU did not previously argue (in opposing Salesforce's Motion to Dismiss) that the preamble of claim 1 is limiting.  *Cf.* Reply 4 (citing Dkt. 25 at 7).  Rather, WSOU had characterized the preamble of claim 1 as providing "context" that was not captured by Salesforce's overgeneralized abstraction. Dkt. 25 at 7.  While this preamble "context" includes reference to "a multi-level hierarchical directory structure," WSOU did not identify an entire "directory" itself as being an affirmative limitation.  *Id*.

In its reply, Salesforce makes no attempt to defend its prior erroneous argument that "the term 'directory' … serves as antecedent basis for a number of limitations in the independent …

---

[3] *Columbia* merely clarified that the clear and unequivocal standard need "not be explicit." *Poly-Am.*, 839 F.3d at 1136. It did not overrule the "clear and equivocal" standard as Salesforce suggests. *See* Reply 4 n.1.

claims." Br. 12.  WSOU's responsive argument therefore stands unrebutted.  *See* Resp. 11–12. Salesforce appears to raise the new (and hence waived) argument, instead, that a preamble term is limiting *as to all claims* if it allegedly serves as antecedent basis for terms recited in the body of a dependent claim *only*.  Reply 5 (citing Br. 11).[4]  No cited authority supports that new proposition.

In the only opinion Salesforce cites, *Pacing Techs., LLC v. Garmin International, Inc.*, 778 F.3d 1021, 1024 (Fed. Cir. 2015), the Federal Circuit found that terms recited in the preamble of an independent claim provided antecedent basis for the same terms recited *both* in the body of *that* independent claim *and* in the body of certain dependent claims.  However, as one court put it, *Pacing Techs.* does not suggest "that antecedent basis for a dependent claim is always sufficient to render a preamble limiting.  *Pacing Techs.* is silent on this point, and such a bright-line rule would create tension with the Federal Circuit's earlier observation that '[n]o litmus test defines when a preamble limits claim scope.'"  *PersonalWeb Techs. LLC v. IBM*, No. 16-CV-01266-EJD, 2017 WL 2180980, at *13 n.15 (N.D. Cal. May 18, 2017) (Davila, J.) (citing *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002)).  Another court similarly held that no authority was cited, nor was it aware of any, "for the proposition that a preamble phrase appearing in an independent claim should be construed as limiting that independent claim simply because that phrase appears in both the preamble and the body of a dependent claim."  *CreAgri, Inc. v. Pinnaclife Inc.*, No. 11-CV-06635-LHK, 2013 WL 1663611, at *8 (N.D. Cal. Apr. 16, 2013) (Koh, J.); *accord TQ Delta, LLC v. 2WIRE, Inc.*, No. 1:13-CV-01835-RGA, 2018 WL 4062617, at *4 n.3 (D. Del. Aug. 24, 2018) (Andrews, J.).  Here, the court should similarly find that Salesforce has not rebutted the presumption merely by asserting that a term *appearing* <u>*only*</u> *in certain dependent claims* derives antecedent basis from the preamble.

Compounding it error, Salesforce fails in its reply to appreciate the difference between the general description in the specification of an example "directory" *itself*, and the recitation in the

---

[4] As noted in WSOU's opening brief, "Salesforce also opted to not offer any opinion as to whether a preamble word could be construed as limiting a *dependent* claim but not limiting the *independent* claim in which the preamble word appears."  Resp. 12 (emphasis original).

claim preambles of the word "directory" within a compound list of *adjectives* collectively modifying the word "structure." Resp. 12–13. Salesforce also does not deny that its proposed definition is improperly circular—i.e., it uses the same "directory" word (in plural form) that it purports to define. *Id.*; *see also Sparton Corp. v. United States*, 68 Fed. Cl. 34, 47 (2005) (rejecting as "clearly improper" a "circular definition" offered in a proposed patent claim construction).

> **2. "identifying a single initial descriptor that links a plurality of descriptors and two or more predecessor descriptors linking another single descriptor"**

It remains undisputed that Salesforce does not purport to *define* any claim terms recited in the disputed phrase. Resp. 13. Rather, Salesforce seeks to add extraneous requirements concerning four distinct *levels of a hierarchy*, which are not expressly recited as affirmative elements in the bodies of either claims 1 or 13, much less in the specific arrangement Salesforce hopes to newly require through its fundamental rewrite. *Id*.

Salesforce mispresents to the Court that WSOU admits "particular descriptors are in particular levels." Reply 6. On the contrary, WSOU explained, for example, that "[n]either the claim language nor the cited statement from prosecution qualifies the 'initial descriptor' in terms of it necessarily being *located* 'in' a specific hierarchical level. Rather, the claim language qualifies the "initial descriptor" in terms of what it *does*—i.e., it 'links a plurality of descriptors and two or more predecessor descriptors.'" Resp. 14 (emphasis original); *see also id*. ("There is no such unambiguous located '*in*' requirement for the descriptors themselves, either in the claim language or the prosecution history.") (emphasis original).

In its reply, Salesforce left unaddressed several fatal flaws WSOU had identified concerning Salesforce's proposed rewrite of the claim language. For example, Salesforce provided no basis to dispute that its "proposed construction would improperly erase at least the explicit link between the 'plurality of descriptors' and the 'two or more predecessor descriptors,' as expressly provided by the 'initial descriptor.'" *Id*. It also remains undisputed, for example, that Salesforce impermissibly seeks to rewrite "descriptors linking" with, "instead, descriptors that are themselves *linked to* another element." *Id*. at 15.

Salesforce has not persuasively defended its proposed rewrite by purporting to diagram the parties' respective positions, without any citation to WSOU's opening brief.  Reply 6.  WSOU's position is not that the "initial descriptor" refers exclusively to "A5-A8 or B4-B7" (of Fig. 3 of the specification) and that a "plurality of descriptors" refers exclusively to 310-1 through 310-12 (of the same figure).  *Cf. id*.  At a minimum, Salesforce's strawman attack ignores the meaningful example linkages represented by the *arrows* shown in Figure 3.  *See* '928 patent, 4:11–12 ("A symbolic link 250 is shown as a dotted arrow between descriptor A4 and descriptor B4.").  In short, Salesforce failed to squarely address what WSOU had argued in its response—i.e., in essence, that the claim language as issued simply means what it says, and it cannot be rewritten under the guise of claim construction to mean something fundamentally different.  Resp. 13–15.

## IV.   U.S. Patent No. 8,335,819 (Case No. 6:20-cv-1166-ADA)

### 1.  "scripting file"

Salesforce misrepresents to the Court that "WSOU concedes a scripting file must be written in a scripting language."  Reply 7.  WSOU had unambiguously argued (and still maintains) that a "scripting file" "is not strictly limited to … scripting instructions." Resp. 15–16 n.8.  WSOU supported its interpretation with *intrinsic* evidence.  *Id*. ("[T]he specification makes clear that 'scripting files' may contain 'web session information,' such as 'session variables,' which are not necessarily themselves written in a scripting language.") (citations omitted).  Indeed, Salesforce concedes the point in acknowledging that a "scripting file" as claimed need not be written exclusively in a scripting language.  *See* Reply 7 n.3.  Because it now appears undisputed that "scripting file" encompasses a file written *at least in part* in a non-scripting language, it would be erroneous and confusing to define this term as a "file written in a scripting language."

Salesforce offers another crucial concession in its reply which belies its attempt to further add the extraneous requirements, "… that is interpreted at runtime instead of being compiled into machine language instructions."  According to Salesforce, the less-reliable *extrinsic* evidence it offers allegedly "demonstrate[es] a POSITA's understanding of 'scripting *languages*.'"  Reply 7.  But the disputed term at issue is "scripting *file*," not "scripting *languages*."  Salesforce offers no

explanation in its briefing, or in the attached declaration testimony (which Salesforce improperly suggests may be incorporated merely by citation thereto, thereby violating the Court's page limits), as to how a POSITA's alleged understanding of "scripting *languages*" should be used to define the distinct claim term "scripting *file*." That the '819 patent specification separately uses both terms further confirms they are not one and the same.

Finally, it is significant that Salesforce acknowledges, and does not dispute, "WSOU's argument that '[t]here is simply no lexicography or disclaimer that compels Salesforce's construction.'" Reply 7. This supports WSOU's position of plain-and-ordinary meaning. *See BCS Software, LLC v. Open Text, Inc.*, 6:21-CV-00050, (W.D. Tex. Oct. 20, 2021) (Albright, J.) ("The 'only two exceptions to [the] general rule' that claim terms are construed according to their plain and ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution.'") (citing *Thorner*, 669 F.3d at 1365).

### 2. "first-time request"

Salesforce acknowledges its interpretation of "first-time request" is crafted to exclude certain preferred embodiments WSOU had identified as being encompassed by the claim scope. *See* Reply 7; *see also* Resp. 16. According to Salesforce, such exclusion is proper here ostensibly because the claim language requires "distinguishing between a first and subsequent request from a client over the *same* client-server connection" and the embodiments in question allegedly can only "distinguish between *different* client-server connections." Reply 7 (emphasis original).[5]

Salesforce ignores, however, that the cited passage expressly invokes the claim language in question by referring to Fig. 3 and its accompanying description as "a flowchart of a process for

---

[5] While Salesforce cites, without explanation to "Schmidt Supp. Decl. ¶ 11" (Rep. 7), Salesforce's reply brief itself does not state any alleged *basis* for the cited opinion. The citation amounts to nothing more than a tacit incorporation by reference that improperly sidesteps the Court's page limits. The citation should therefore be disregarded. The cited *extrinsic* evidence should also be disregarded as contradicting *intrinsic* evidence. For example, the erroneous and conclusory opinion testimony suggesting that a socket ID is unusable in differentiating sessions of the same reusable connection (Schmidt Supp. Decl. ¶ 11) is inconsistent with the description of Fig. 3 stating that "the socket ID can be used to differentiate KeepAlive sessions" ('819 patent, 8:41–42).

providing client-side caching to a device for the *first request* of web content, according to one embodiment." Resp. 16–17 (discussing '819 patent, 2:60–62) (emphasis added). The flowchart of Fig. 3 includes a determination (at step 305) as to "whether the request (and subsequent caching) of the scripting file is a first request." '819 patent, 8:32–34. As shown in Fig. 3, the determination (at step 305) is not performed unless the "connection" is determined to be "reusable" (at step 303). Thus, the alleged basis for Salesforce's exclusionary theory (i.e., that the preferred embodiments in question all pertain *only* to distinguishing between *different* connections) cannot be squared with the prerequisite condition (in Fig. 3) that the connection in question is determined to be *reusable* (at step 303). Moreover, it is simply irrational for Salesforce to argue that preferred embodiments expressly pertaining to determining whether a *reusable connection* is a "first-time request" are excluded from "determining whether the request is a first-time request," as recited in claim 1.

Salesforce concedes its construction *further* seeks to limit "first-time request" as excluding *all* requests where *any* previous session information exists. *Compare* Resp. 17–18 *with* Reply 7–8. But the surrounding claim language requires "collecting session configuration information for the web content from the device." Salesforce attempts verbal gymnastics by arguing no previous "session information" exists even where "session configuration information" must exist. In other words, according to Salesforce, information concerning configuration of a session is not properly considered a type of "session information." Such an argument falls flat on its face.

## V.    U.S. Patent No. 8,369,827 (Case No. 6:20-cv-1167-ADA)

### 1.    "Subscriber Profile Repository (SPR)"

Salesforce doubles-down on its legal error in arguing the preambles in question are limiting because they "provide context to and the purpose of the claim." Br. 7; Reply 8 (twice referring to the preambles as providing "context"). It is well established that this only supports upholding the presumption that the preambles in question are not limiting. Resp. 18 (citation omitted). Contrary to what Salesforce suggests, the presumption is likewise unaffecting by prior arguments raised by WSOU in opposing Salesforce's Motion to Dismiss. Dkt. 25 at 6. Consistent with its briefing on claim construction here, WSOU had correctly challenged Salesforce's overgeneralized *abstraction*

of claim 1 (under step one of the *Alice/Mayo* analysis) as being untethered to certain "context" recited in the preambles of claims 1 and 14.  *Id.*

Compounding its legal error, Salesforce failed to appreciate the basis for which WSOU cited *Cochlear*.  Resp. 19.  The cited holding in *Cochlear* directly contradicts Salesforce's position that the preamble term "Subscriber Profile Repository (SPR)" is limiting ostensibly because *other* preamble language, not at issue before the Court, allegedly provides antecedent basis for corresponding terms recited in the body of the claim.  *Id.*  Salesforce offers no rebuttal.

Salesforce attempts to raise the new (and hence waived) argument in its reply that "[t]he recitations of 'Subscriber Profile Repository (SPR)' in the preamble are limiting because they … provide … antecedent bases for 'a unique subscriber record' and 'subscription identifiers.'"  Reply 8.  But Salesforce fails to explain why the "SPR" term purportedly provides antecedent basis for those plainly distinct terms.  It does not.  Moreover, Salesforce offers no direct rebuttal to the point that "[t]he bodies of claims 1 and 14 each introduces 'at least one subscription identifier' as an element that is independent of anything recited in the respective preamble.'"  Resp. 19.

Finally, WSOU defers to the explanation in its opening brief as to why, in the *context* recited in the preambles of claim 1 and 14, the "SPR" term refers to something other than anything previously implemented in the 3GPP specifications.  Resp. 19–21.  Extrinsic evidence on this point is unnecessary (and considerably less reliable) where the intrinsic evidence, including the '827 patent specification itself, expressly disparages prior approaches.  *Id.*

## VI.     U.S. Patent No. 8,391,892 (Case No. 6:20-cv-1168-ADA)

### 1.     Single dispute: whether claim 1 recites a specific order of steps

It remains undisputed that claim 1 recites "store" and "receive" not as affirmative acts, "but rather as expressly qualifying the 'service' itself in terms of its configuration."  Resp. 21.  Salesforce fails to explain why limitations directed to how a service is *configured* can be rewritten to require, instead, performance of unrecited *acts* in a particular order.

Salesforce also leaves unrebutted the observation that "the claim language does not preclude 'log[ging]' a request to access and doing so before 'allow[ing] or deny[ing] access to said

presence information based on a pre-defined list.'"  Resp. 22.

Finally, Salesforce acknowledges it derived its (erroneous) "specific order" interpretation from a prior version of claim 1 that ultimately did not issue with the '892 patent.  Reply 10. Salesforce attempts to defend its legal error by suggesting the acknowledged differences between versions of claim 1 are inconsequential.  *See id*.  But the prosecution history reveals otherwise at least because certain amendments were entered before claim 1 was deemed allowable.  Indeed, the error in Salesforce's "specific order" interpretation is laid bare by Salesforce's statement: "claim 1 has seven basic steps where *the first four* have a specific order, 1) 'stor[ing],' …."  Br. 39 (emphasis added).  While a prior version of claim 1 recited "storing" immediately following the claim preamble, claim 1 as issued recites "determining" immediately following the preamble. Resp. 21–22.  It is quite telling that Salesforce makes no mention of the "determining" step of claim 1 (as issued) in identifying the so-called "first four steps" of claim 1.  Br. 39.

## VII.    U.S. Patent No. 8,923,899 (Case No. 6:20-cv-1169-ADA)

### 1.    "RESTful"

*First*, the intrinsic evidence conflicts with Salesforce's claim that the Examiner "did not even understand the term [RESTful] immediately." Reply 10. As WSOU noted, the term "RESTful" is recited in the tile and abstract. Resp. 23. While Saleforce claims that WSOU failed to cite any authority, the MPEP instructs Examiners that titles should be "brief but technically accurate and descriptive" and abstracts should "sufficiently describe the disclosure to assist readers in deciding whether there is a need for consulting the full patent text for details." MPEP §608.01(b) (8th ed. Rev. 7 July 2008). The fact that the Examiner allowed the '899 patent to issue with "RESTful" in the title and abstract—without further defining that term in the specification— demonstrates that the term had a plain and ordinary meaning to a POSITA. The lack of any need for an express definition was further confirmed expressly by the Applicant, which the Examiner accepted. In particular, the Examiner first asked for "***explanation for the abbreviation.***" Ex. C at 2. In response, the Applicants noted that "***the Applicants do not think it is necessary to somehow spell out RESTful, as it is known in the art***." Ex. 899-4 at 8. In subsequent prosecution, the

Examiner withdrew the objection. *See, e.g.*, Ex. D at 2 (indicating no pending objections). The prosecution thus demonstrates that the Examiner acquiesced to the Applicants' statement that "RESTful" is "known in the art" and, accordingly, it is unnecessary to "spell out" the term. *See id.*

**Second**, Salesforce construction is flawed for being based solely on "an acronym introduced in a Computer Science Ph.D. dissertion." But the Ph.D. dissertation (Ex. 899-5) was purportedly authored in 2000, eleven years before the filing date of the application that led to the issuance of the '899 patent. And other than the conclusory statement by Salesforce's expert (Schmidt ¶121), Salesforce has pointed to no evidence that the Ph.D. student's description of REST architecture would be adopted by a POSITA at the time of the invention. Salesforce's logic is akin to claiming that the understanding of individual that first use of the word "telephone" in 1796, should somehow be applied to present-day inventions. https://en.wikipedia.org/wiki/Telephone. That the term "RESTful" has origins but not defined by its initial usage is reflected in the Applicants statement that the "RESTful is ***based on*** the Representational State Transfer (REST) architecture." Ex. C at 2. That "RESTful" is "***based on***" Representational State Transfer (REST) architecture does not necessarily bind the term "RESTful" as Salesforce proposes.

### 2. "Session Initiation Protocol (SIP) request" / "SIP request"

**First**, Salesforce has now admitted that (a) the "specification did not recite 'Session Initiation Protocol (SIP) request" / "SIP request" and (b) the "specification does not define [either term]." Br. 44; Reply 11. As WSOU noted, Salesforce thus concedes a lack of lexicography. *See* Br. 44.

**Second**, in its Response, WSOU had noted Salesforce's improper reliance on extrinsic evidence. *See* Resp. 26. Salesforce attempts to justify its response by arguing that when a specification does not recite or define a term, it is—according to Salesforce—"useful and appropriate for the Court to refer to such [extrinsic evidence]." Reply 11 (citing *Engineered Arresting Sys. Corp. v. Runway Safe LLC*, 1:15-CV-546-LY, 2016 WL 5107083, at *6 (W.D. Tex. Sept. 19, 2016)). But the Court in *Engineered Arresting* quoted the en banc *Phillips* decision which noted the "marginal relevance [of extrinsic evidence] that could be brought to bear on any claim

construction question." *Id.* at *6 (citing *Phillips*, 415 F.3d at 1318). Accordingly, *Engineered Arresting* supports WSOU's position that extrinsic evidence is "unlikely to result in a reliable interpretation of patent claim scope unless considered **in the context of the intrinsic evidence**." *Phillips*, 415 F.3d at 1319.

**Third**, Salesforce continues to ignore that dependent claim 2 (which depends on independent claim 1) recites that "first SIP request comprises a SIP MESSAGE." By further requiring that the "first SIP request" comprise a "SIP MESSAGE," the claim language indicates that they are not one in the same. *See* Resp. 26 (citing authorities).

**VIII.   U.S. Patent No. 9,088,493 (Case No. 6:20-cv-1170-ADA)**

### 1. "login of the user with one of the one or more online services"

It remains undisputed that there is no disclaimer or lexicography concerning the phrase in question. Nevertheless, Salesforce argues in its reply that a construction apart from "plain-and-ordinary meaning" is required because Salesforce unilaterally raised a "dispute." Reply 12. But that would impermissibly add an unrecognized exception to the general rule reiterated in *Thorner*.

Salesforce acknowledges its proposed construction seeks to add extraneous limitations concerning "how and why the user uses the online service which is associated with the login to generate the usage information." *Id.*; *see also* Resp. 27. This would violate the proscription against adding limitations neither required by claim terms nor unambiguously required by either the specification or the prosecution history. *See, e.g.*, *Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 796–97 (Fed. Cir.), *cert. denied*, 140 S. Ct. 648 (2019); *Dayco Prods., Inc. v. Total Containment, Inc.*, 258 F.3d 1317, 1327 (Fed. Cir. 2001). In addition, Salesforce's suggestion that the "how and why" is allegedly missing from the disputed phrase is inapposite. It is the *specification* that must provide an enabling disclosure, not the *claim language* itself.

The extraneous limitations Salesforce seeks to add are not unambiguously required by any of its citations to the '493 patent specification. According to Salesforce, in certain embodiments, the specification allegedly "connects 'login' with user registration and authentication." Reply 12. Salesforce fails to explain, however, how its mischaracterization of the specification compels the

construction it seeks.  It does not.  Moreover, the cited examples of the specification expressly differentiate *authentication* and *login* concepts.  For example, a cited embodiment attributes user authentication to module 201, while creating and storing login information are attributed to a *distinct* module 207.  '495 patent, 7:20–25.  Another passage Salesforce cites (without explanation) states that runtime module 207 *retrieves* information from a user information database, without expressing any requirement for the user to enter anything.  *Id.*,  8:42–47.  Salesforce then uses quotation marks in a misleading attempt to pass off its *own* mischaracterization of the specification as an alleged quotation.  Reply 12 (misquoting '493 patent, 4:7–8, as allegedly stating "there needs to be 'an entering of user information in order to access an online service.'").  Contrary to what Salesforce mispresents to the Court, the specification does not state in the cited passage (or elsewhere) that "login" necessarily requires a user to enter anything in order to gain access.

Salesforce's belated attempt to inject an issue as to whether the disputed phrase requires a "specific sequence of events" is of no moment because it remains undisputed that (1) the claim language itself does expressly recite any such sequence and (2) Salesforce's construction does not make explicit any requirement that the claimed "login" must take place after an *unrecited* registration.  *Compare* Resp. 28 *with* Reply 12.

Finally, Salesforce faults WSOU for allegedly ignoring Salesforce's conclusory reference to less-reliable extrinsic evidence in the form of a single, cherry-picked dictionary definition (offered without any accompanying expert declaration testimony).  Reply 12.  The cited dictionary definition was purportedly taken from a published edition that postdates the earliest effective filing date of the '493 patent by *seven* years.  Given that Salesforce has not identified any affirmative requirement in the *intrinsic* evidence that the "login" necessarily requires the user to enter anything, Salesforce's conclusory reliance on a non-contemporaneous dictionary definition should be disregarded as "not indicative of how the term is used in the patent."  *Ravgen, Inc. v. Natera, Inc. et al*, 1-20-cv-00692, Supp. Markman Order, *4 (W.D. Tex. Nov. 8, 2021) (Albright, J.).

> **2.**   **"[determining / determine] … a pattern of consistent usage from the timing information"**
>
> **3.**   **"a consistency of the determined pattern of consistent usage"**

Salesforce's reply only underscores its failure to prove indefiniteness by clear and convincing evidence.  ***First***, regarding phrase no. 2, it remains undisputed that claims 1 and 5 both expressly qualify the claimed "pattern of consistent usage" as follows: 'wherein the pattern reflects usage of at least one of the one or more online services and transmission availability of a message.'"  Resp. 28–29.  Salesforce offers no explanation in its reply as to why this "wherein" clause fails to contribute any reasonable certainty.  Rather, Salesforce improperly attempts to flip the applicable burden on its head by replying that "WSOU does not explain how the 'wherein' clause bears on the 'consistent' term."  Reply 13–14.  As WSOU had explained, however, the bearing is made explicit at least by use of the definite article "the" in making antecedent reference to "the pattern" (i.e., *the pattern of consistent usage*).  Resp. 28–29.

***Second***, Salesforce fails to explain how the authority it cites counsels against interpreting use of the definite article "the" in the "wherein" clause as an explicit antecedent reference. Reply 14 (citing *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1340 (Fed. Cir. 2016)). The cited portion of *Akzo* admonishes against an interpretation that would render certain claim language superfluous.  811 F.3d at 1340.  Here, regarding disputed phrase no. 3, the "consistency" term is not rendered superfluous merely by recognizing that use of the definite article "the" in the phrase "*the* determined patten of consistent usage" is an antecedent reference.  Put simply, while term no. 2 refers to "a *pattern* of consistent usage," term no. 3 refers to "a *consistency*" of that pattern.  This plain reading of the claim language properly gives meaningful effect to each term.

***Third***, also regarding phrase no. 3, it remains undisputed that "the specification describes an embodiment involving 'consistency rules' based on the following mathematical expression: 'the amount of variation in timing information over a certain period of time.'  '493 patent, 4:48–50."  Resp. 29.  WSOU had pointed to this disclosure as a "counterexample [which] refutes Salesforce's incorrect assertion that 'the only disclosures in the specification . . . involve terms of degree.'"  *Id.* (citing Br. 19).  Salesforce leaves uncontested the observation that "[n]othing in the

16

claim language prohibits the 'generating' of claim 1, or the 'generate' of claim 5, from being 'based on … a consistency of the determined pattern of consistent usage,' where the 'consistency' is itself based on 'the amount of variation in timing information over a certain period of time' (as disclosed in the quoted example)."  *Id*.  Salesforce merely gripes, instead, that this *preferred embodiment* is itself too ambiguous ostensibly because it does not explicitly provide constraints as to what may be used for the "certain period of time" in the example mathematical expression.  Reply 13.  That a preferred embodiment advantageously allows for *flexibility* in selecting a time variable used for calculations involving "consistency rules" does not render the "consistency" term indefinite.  *In re Gardner*, 427 F.2d 786, 788 (CCPA 1970) ("Breadth is not indefiniteness."); *see also Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1576 (Fed. Cir. 1986) (finding the district court erred in addressing "indefiniteness of the 'patent'" *specification* as opposed to properly reviewing definiteness of the *claim language*) (citation omitted).

**Fourth**, contrary to what Salesforce falsely asserts, WSOU did not argue that "Salesforce's alternative constructions … are indefinite terms of degree."  Reply 13.  Rather, WSOU had argued (and still maintains) it would be improper to add "*unrecited* terms of degree under the guise of claim construction."  Resp. 29–30 (emphasis original).  It only further undermines Salesforce's position that *it* has now called into question whether *its* extraneous terms of degree are indefinite.

**Finally**, Salesforce does not deny its proposed constructions (offered in the alternative to its indefiniteness theory) "would risk excluding certain preferred embodiments," including by impermissibly adding extraneous requirements concerning terms of degree.  Resp. 30.

## IX.    U.S. Patent No. 9,277,060 (Case No. 6:20-cv-1171-ADA)

### 1.    "event"

**First**, Salesforce fails to explain why two Federal Circuit panel decisions (*Columbia* and *InterDigital*) would somehow render the well-established panel decision in *Thorner* "incorrect." *See* Reply 16. Neither *Columbia* nor *InterDigital* (which is nonprecedential) even hint that they are overruling *Thorner*. Nor could they. A Federal Circuit panel decision (such as *Thorner*) can only be overruled by the Federal Circuit en banc. And while Salesforce refers to WSOU's

"application of *Thorner*" being "incorrect" it fails to provide any explanation for its position.

**Second**, Salesforce has admitted that it is relying not on a particular lexicography or disavowal for the claim term "event," but instead the "entire context of the '060 patent." Br. 27. Salesforce continues to cling to this improper "context" approach. Reply 16. But the "standard for disavowal is *exacting*" and requiring that the specification "makes clear that the invention does not include a *particular feature*." *Thorner*, 669 F.3d at 1366 (quotations omitted). Salesforce has not met this "exacting" standard.

**Third**, WSOU had noted why Salesforce was wrong to conclude that the surrounding claim language of claims 1 and 17 "confirms that 'events' are specifically tied to communications." Br. 27; Resp. 31. Contrary to Salesforce's assertion, the mere fact that incoming telephone calls are "receiv[ed] at a communication device" does not necessarily make all "events" and "communications" "specifically tied."

**Fourth**, WSOU had explained why Salesforce was wrong to argue that the specification supports its construction. WSOU had pointed out the specification's reference to non-communication events such as an "appointment in a calendar." '060 patent at 4:9.  As WSOU noted, the specification describes an "[a]n alert message 46 may, for example, reference the *last communication* that is associated with the extracted identifier *irrespective of the event, i.e.* phone call, message, email or appointment." *Id.* at 6:11–14. If a "communication" can be "irrespective of an event," they cannot be inextricably tied together as Salesforce claims. Salesforce attempts to brush away this portion as "cherry-picked" but fails to reconcile this portion of the specification with its construction.

**Fifth**, Salesforce relies on a new case (*St. Isidore*) for the construction of the word "event" in an unrelated patent. As noted above and recognized by Salesforce, claim terms must be construed in the context of the intrinsic evidence. The *St. Isidore* case thus has no bearing to the issues here. *See Medrad,* 401 F.3d at 1318; *see also* Resp. 38 n.12 (citing additional case law).

18

2.      "log(s)"

*First*, Salesforce attempts to casts WSOU's arguments that lexicography does not apply as "formulaic" and "incorrect as a matter of law." *See* Reply 14. Salesforce does not explain why it believes WSOU's position is "incorrect as a matter of law" other than point to the *Columbia* case. *See id.* But as noted, *Columbia* quoted and endorsed *Thorner* for the proposition that "[i]t is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments, the patentee must clearly express an intent to redefine the term." *Columbia*, 811 F.3d at 1363 (quoting *Thorner*, 669 F.3d at 1365).[6] Yet this approach—rejected by both *Thorner* and *Columbia*—is exactly what Salesforce argues both in its Opening Brief and Reply. *See* Br. 28–29; Reply 14–15.[7]

**Second,** WSOU had explained that the express claim language specifies that the "updating" occur "by a processor of the communication device" and that the thing being updated is the "data associated with the included identifier in one or more logs." While the express claim language applies the "updating" to the "data associated with the included identifier in one or more logs," Salesforce's construction would apply the "updating" to the log itself. Salesforce fails to address this disconnect attempts to blur the line between "data associated with the included identifier in one or more logs" and "logs." Reply 15. In any event, Salesforce fails to meet the "exacting" standard for disavowal. *Thorner*, 669 F.3d at 1366 (quotations omitted).

---

[6] *Columbia* merely clarified that the clear and unequivocal standard "not be explicit." *Poly-Am.*, 839 F.3d at 1136. It did not overrule the "clear and equivocal" standard as Salesforce suggests. Reply 4 n.1.

[7] Salesforce wrongly claims that the *Scripps* decision holds that the word "is" constitutes "definitional lexicography"). Reply 14 (citing *Scripps Research Inst. v. Illumina, Inc.*, 782 Fed. Appx. 1018, 1022 (Fed. Cir. 2019)). *Scripps* examined excerpt from the specification, "an integer as described previously to **connote** the number of *chemical unit identifiers* in the oligonucleotide." *See id.* The Federal Circuit noted that it saw "no sound basis for understanding the word 'connote' in this setting to mean anything but 'is.'" *Id.* Contrary to Salesforce's suggestion, the word that was emphasized in *Scripps* was "connote" not "is." Thus, Scripps does not support that the word "is" can constitute "definitional lexicography."

**X.**     **U.S. Patent No. 9,336,320 (Case No. 6:20-cv-1172-ADA)**

**1.**     **"the menu items are associated with the two or more different services"**

*First*, Salesforce wrongly argues that the "plain language of the claims indicates that a single menu item is associated with two or more different services." Reply 18. There is no support for such a reading. Namely, the claim language recites that "*the* menu *items*" (plural) are "associated with the two or more different services." The word "each," which Salesforce attempts to interject presumably for non-infringement purposes, is not present in the claim language or any reasonable reading of the claim language. The Court should not condone Salesforce's outcome determinative approach.

*Second*, the claim language reference to "services" (plural_ does not support Salesforce's construction. The claims repeatedly refer to "menu items" (plural) "associated with two or more different services." As noted, there is no interjection of the notion of "each" as Salesforce contends. The one time a singular "menu item" is referenced to being "associated with two or more different services," merely defines that that particular "menu item" is associated with two or more different services. This application of the singular case, however, does not overrule the express recitation that the "menu items" (plural) are "associated with two or more different services."

*Third*, Salesforce continues to rely on a confusing and inaccurate depiction of the prosecution to purportedly show disclaimer. Reply 19. As WSOU explained, Salesforce disingenuously suggests that the arguments above were a "characterization of this term," with "this" referring to the term in dispute here. Resp. 42. But as WSOU noted, the arguments the Applicants made merely quoted the verbatim language of the second "wherein" clause, which is not in dispute here. *See id.* The claim term that is in dispute is the first "wherein" clause. At most, Salesforce's arguments have established that the express language of the second "wherein" clause is limiting *to that clause*. It does not have any bearing and is certainly not a characterization of the first "wherein" clause—*i.e.*, the clause that is in dispute here.

### 2.   "presented in a manner indicating that at least one menu item is unavailable"

*First*, Salesforce fails to provide a principled basis why the *Meade* case is "instructive" to the term at issue here. *See* Reply 19. As WSOU noted, a particular term, even the same term, "need not have the same meaning when used in an entirely separate patent, particularly one involving different technology."  Resp. 38 (citing *Medrad,* , 401 F.3d at 1318). Salesforce has not made any showing that the technologies are the same, and the *Meade* case relied on specific surrounding claim language (which is obviously not present here).

*Second*, Salesforce fails to justify incorporating limitations from the specification which were expressly qualified as only applying "in some *embodiments*" and that described permissively as the "menu structure *may* show."  Resp. 38–39 ('320 patent at 10:51–57).  The claims recite a broad concept ("presented in a manner indicating that at least one menu item is unavailable"), and ghosting is just one of the ways this is performed in "some" but not all embodiments. This comports with Salesforce's concession that the "original application described 'ghosting' as optional."  Reply 20.

*Third*, Salesforce's arguments regarding the prosecution history are equally lacking. Salesforce argues (wrongly) that when the Applicant amended the claims to include the disputed term—"presented in a manner indicating that the at least one menu item is unavailable"—that the Applicants invoked the reference to "ghosting" in the specification because (according to Salesforce) the claim language "very closely tracks" and/or is "so closely related" to the specification's reference to "ghosting."   Reply 20. But as noted above, the portions of the specification relies only applies to "some embodiments" not all embodiments.

*Fourth*, Salesforce misreads the prosecution history by crossing its wires with respect to statements made with respect to two different limitations. Resp. 39-41; Reply 20. WSOU references the explanation of the prosecution history in its Response.  With a proper understanding of the prosecution history (*see* Resp. 39-41), Salesforce's attempt to invoke prosecution history disclaimer should be rejected.

Dated: December 1, 2021                     Respectfully submitted,

                               By:     */s/ Ryan S. Loveless*
                                       James L. Etheridge
                                       Texas Bar No. 24059147
                                       Ryan S. Loveless
                                       Texas Bar No. 24036997
                                       Brett A. Mangrum
                                       Texas Bar No. 24065671
                                       Travis L. Richins
                                       Texas Bar No. 24061296
                                       Jeff Huang
                                       Etheridge Law Group, PLLC
                                       2600 E. Southlake Blvd., Suite 120 / 324
                                       Southlake, TX 76092
                                       Tel.: (817) 470-7249
                                       Fax: (817) 887-5950
                                       Jim@EtheridgeLaw.com
                                       Ryan@EtheridgeLaw.com
                                       Brett@EtheridgeLaw.com
                                       Travis@EtheridgeLaw.com
                                       JHuang@EtheridgeLaw.com
                                       Brian@EtheridgeLaw.com

                                       Mark D. Siegmund
                                       State Bar No. 24117055
                                       mark@swclaw.com
                                       STECKLER WAYNE COCHRAN CHERRY,
                                       PLLC
                                       8416 Old McGregor Rd.
                                       Waco, Texas 76712
                                       Telephone: (254) 651-3690
                                       Facsimile: (254) 651-3689
                                       *Counsel for Plaintiff WSOU Investments, LLC*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE]- Document Filing System, to all counsel of record, on December 1, 2021.

                                       */s/ Ryan S. Loveless*
                                       Ryan S. Loveless